IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Diversified Colors Inc., | ) | |
| | ) | C.A. No. 7:10-2156-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Cranston Print Works Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on the parties' cross-motions for summary judgment.

After consideration, the court grants Cranston Print Works Company's ("Cranston") motion and

grants Diversified Colors Inc.'s ("Diversified") motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the complaint, Diversified alleges that it had an oral contract with Cranston, a printing

company, to provide rapidogen dyes to Cranston for use in its print business. Diversified alleges

that the "verbal agreement" required it to "keep on hand a sufficient amount of raw materials in

order to make on call rapidogen dyestuffs for the need of Cranston." (Compl. ¶ 5.) Herbert

Moore, Jr. ("Moore"), the president of Diversified, states that Diversified has been supplying

rapidogen dyes to Cranston since late 2007. (Pl. Mem. Opp'n Summ. J. Ex. 4 (Moore Aff. at

1).) Moore states that

> [f]or approximately 20 years he has been actively involved in supplying rapidogen
> dyes to Cranston Print Works. This involvement was through Blackman Uhler
> Chemical Company for 16 years, Greenville Colorants for one year and Diversified
> [] for 3 years. This involvement consisted in determining with Cranston [] which
> rapidogen products, their amounts, and their delivery to Cranston. Cranston Print

1

> Works had used consignment inventory for many years to insure that adequate
> inventory was on hand, due to the delicate nature of rapidogen dyes to cold
> temperatures.  Cranston [] determined and placed orders for consignment inventory
> to be delivered to their locations.
>      In addition to the inventory that was held at Cranston [], I insured that
> adequate stocks of finished rapidogen dyes were on hand for Cranston [] at our
> manufacture locations.  Additionally rapidogen material stocks had to be imported
> on a regular basis to insure that rapidogen dye could be manufactured in a timely
> manner.

(Id. Ex. 1 (Moore Aff. at 1-2).)  Cranston would accept inventory on consignment to ensure that

adequate inventory was available for use.  Thus, Diversified was paid for the rapidogen dye only

after it was sent to Cranston on consignment and actually used by Cranston.  (Def. Mem. Supp.

Summ. J. 2.)

In late 2008, Diversified changed its raw materials supplier.  Prior to late 2008,

Diversified obtained its raw materials for making rapidogen dyes from an Indian company,

Chem-Tex.  (Def. Mem. Supp. Summ. J. Exs. (Moore Dep. Vol. II at 13).)  However, Chem-

Tex's raw materials had quality issues.  According to Moore, Chem-Tex's "products contained

higher than acceptable salt content which required reworking by Diversified [] at its expense

without any damage or cost" to Cranston.  (Pl. Mem. Opp'n Summ. J. Ex. 4 (Moore Aff. at 2).)

Thus, Diversified began purchasing raw materials from Eastar Chemical, a Chinese company, in

late 2008.  However, Eastar would only provide the materials to Diversified in six-month

batches, known in the industry as "campaigning production."  (Id. Ex. 4 (Moore Aff. at 2).)

Previously, Diversified purchased raw materials based on quarterly estimates.  (Def. Mem.

Supp. Summ. J. Exs. (Moore Dep. at 55).)  According to Cranston, the decision to purchase raw

materials from Eastar was made "solely by Diversified and prior to placing the order with

Eastar, Diversified did not have any communications with Cranston to confirm that Cranston would use six months of material." (Id. 3.)

In 2009, Cranston closed its Webster manufacturing plant for economic reasons. Cranston notified Diversified that it would no longer need rapidogen dye two weeks prior to the January 26, 2009 public notice that the plant was closing. (Id. Exs. (Moore Dep. at 52).) However, Cranston continued to use and pay for rapidogen dye for an additional five months "while its Webster manufacturing plant phased out." (Id.) Diversified's final request for payment for rapidogen dye used by Cranston was emailed on June 1, 2009. (Id. Ex. 3 (June 1, 2009 Email).) In the instant suit, Diversified is seeking to recover $85,476.25, for raw materials that it purchased between 2006 and 2008 from Chem-Tex and Eastar. None of the materials that Diversified is seeking payment for were delivered to Cranston or converted "into a finished product suitable for use by Cranston." (Id.)

Cranston moved for summary judgment on June 30, 2011, alleging that it is entitled to summary judgment on Diversified's breach of contract claim because there was no oral contract, and even if an oral contract existed, the oral agreement violates the statute of frauds. Diversified responded to Cranston's motion for summary judgment on July 15, 2011. On July 19, 2011, Diversified moved for summary judgment on Cranston's counterclaims for an accounting and abuse of process. Diversified alleges that it has performed an accounting and that the abuse of process claim is without merit. Cranston never responded to Diversified's motion for summary judgment and the deadlines have expired. Therefore, these matters are ripe for consideration.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Cranston's Motion for Summary Judgment

Cranston moves for summary judgment on Diversified's breach of contract claim, arguing that (1) there is no oral contract between Cranston and Diversified; and (2) even if there

4

were an oral contract, this claim is barred by the statute of frauds. (Def. Mem. Supp. Summ. J.,

generally.)

To recover for a breach of contract, a plaintiff must prove the existence of a contract, the

breach of the contract, and damages caused by the breach. See Fuller v. E. Fire & Cas. Ins. Co.,

124 S.E.2d 602, 610 (S.C. 1962). The required elements of a contract are an offer, acceptance,

and valuable consideration. Sauner v. Pub. Serv. Auth. of S.C., 581 S.E.2d 161, 166 (S.C.

2003). "A contract is an obligation which arises from actual agreement of the parties manifested

by words, oral or written, or by conduct." Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. Ct.

App. 1997). Valuable consideration may consist of "some right, interest, profit or benefit

accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or

undertaken by the other." Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship, 503 S.E.2d 184,

186 (S.C. Ct. App. 1998). In order to have a binding contract, it is necessary that the parties to a

contract have a meeting of the minds with regard "to *all* essential and material terms of the

agreement." Player v. Chandler, 382 S.E.2d 891, 893 (S.C. 1989). Price, time, and place are

essential terms of a contract. Edens v. Laurel Hill, Inc., 247 S.E.2d 434, 436 (S.C. 1978).

Furthermore, the assent must be as to all of the terms of the contract. See Lee v. Travelers' Ins.

Co. of Hartford, Conn., 175 S.E. 429, 433 (S.C. 1934).

The court finds that there are no genuine issues of material fact concerning whether an

oral contract requiring Diversified to "keep on hand a sufficient amount of raw materials in

order to make on call rapidogen dyestuffs for the need of Cranston" existed between the parties.

(Compl. ¶ 5.) In conclusory form, Diversified alleges that "[t]he contract was valid between the

two parties. Both parties agreed for valuable consideration that Diversified Colors Inc. would

5

sell goods to Cranston Print Works Company for a price, which was based upon Diversified

Colors' cost plus an agreed upon markup as required to meet Cranston's needs." (Pl. Mem.

Opp'n Summ. J. 2.) However, Diversified has failed to present any evidence of offer or

acceptance of the alleged oral contract. The evidence presented is devoid of any inference of

discussion or negotiation of contract terms or a meeting of the minds on the essential terms of an

oral contract. Diversified, without consulting Cranston, decided to purchase a six-month supply

of raw materials from Eastar. (Id. Ex. 4 (Moore Aff. at 2).); (Def. Mem. Supp. Summ. J. Exs.

(Moore Dep. at 54).) Diversified decided to "campaign production" because of the "economy in

manufacture." (Pl. Mem. Opp'n Summ. J. Ex. 4 (Moore Aff. at 2).)

Moore's statements in his affidavit indicate that there was general discussion with

Cranston regarding its needs based on orders from prior years. In an email from Richard

Malachowski, technical manager at Cranston, to Andy Sylvia, president of Cranston, on

June 26, 2009, Malachowski states that

> Cranston did supply Diversified with best projections regarding Rapidogen color
> needs, including that it was expected that Cranston would use about the same
> amount of Rapidogen color in Calendar year 2008. Monthly expectations of
> Rapidogen color were also communicated based on current Plant backlogs.
> Conversations with Diversified Color on planning color supply are typical and
> happen with most Suppliers in order to assure consistent production and delivery
> of product.

(Id. Ex. 1 (Malachowski Email 6/26/09).) However, there is no evidence that Cranston required

that Diversified have available a particular amount of raw materials to produce rapidogen dye or

that Cranston was required to purchase rapidogen dye in certain minimum quantities. (Def.

Mem. Supp. Summ. J. Exs. (Moore Dep. Vol. II at 32).) To the contrary, Cranston ordered

rapidogen on consignment to ensure that it would have enough rapidogen dye available at its

6

facility.  Cranston would notify Diversified of how much rapidogen had been used at the end of

the month and Diversified would invoice Cranston for that amount.  (Id. Exs. (Moore Dep. at

87).)  Upon use, Cranston paid Diversified for the rapidogen dye.  There is no evidence that

Cranston has failed to pay for any rapidogen dye that was used by Cranston.  To the contrary,

Diversified seeks payment for raw materials that were not sent to Cranston on consignment.  (Id.

Exs. (Moore Dep. Vol. II at 12).)  Based on the foregoing, Diversified has failed to produce any

evidence of a meeting of the minds on any basic terms of the alleged oral contract with any

"reasonable certainty."  Trident Constr. Co. v. Austin Co., 272 F. Supp. 2d 566, 576 (D.S.C.

2003).

At best, Cranston and Diversified had a course of dealing.  However, having found that

no contract exists, the parties' course of dealing is irrelevant.  Course of dealing only applies

when "a contract is silent as to a particular matter" or to the interpretation of an ambiguous

contract.  Keith v. River Consulting, Inc., 618 S.E.2d 302, 305 (S.C. Ct. App. 2005) ("[I]t is

necessary for enforceability that the essentials of the contract be agreed upon *but all need not be*

*expressed*.  They may be implied from custom and usual forms [trade usage] and former course

of dealing."  (Internal quotation marks omitted); Moss v. Porter Bros., Inc., 357 S.E.2d 25, 27

(S.C. Ct. App. 1987).  Based on the foregoing, the court finds that no contract existed with

Cranston.  Therefore, the breach of contract claim fails.

In addition, even if there were an oral contract, the breach of contract claim fails because

the claim does not satisfy the statute of frauds.  S.C. Code Ann. § 36-2-201(1) provides that

> [e]xcept as otherwise provided in this section a contract for the sale of goods for
> the price of $500 or more is not enforceable by way of action or defense unless
> there is some writing sufficient to indicate that a contract for sale has been made

7

between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Further, § 36-2-201(3) provides that a contract that is not in writing,

but which is valid in other respects is enforceable
(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
(c) with respect to goods for which payment has been made and accepted or which have been received and accepted.

"Moreover, a contract required to be in writing by the South Carolina Statute of Frauds cannot be orally modified." Player, 382 S.E.2d at 894 (internal citations omitted). Diversified does not dispute that the alleged oral contract was for the sale of goods in an amount exceeding $500.00. Moore states in his affidavit that although Cranston was responsible for "over 95% of the rapidogen dye" utilized in the United States, that there are two other users in the United States, Santee Prints and Carlisle Finishing. (Pl. Mem. Opp'n Summ. J. Ex. 4 (Moore Aff. at 1).) Further, Diversified seeks payment for raw material that has not been converted into rapidogen dye. Thus, the raw materials at issue have not been specially manufactured for Cranston and although Moore states that "there is no other market in the world at this time," based on his own affidavit there are two other potential buyers who use rapidogen dye in the United States. (Id. Ex. 4 (Moore Aff. at 4).) In addition, Cranston has not admitted to the existence of a contract. Finally, the raw materials have not been received or accepted by Cranston as Diversified

concedes that it is seeking recovery for raw materials in its possession. Based on the foregoing, there is no applicable statute of frauds exception. Thus, even if the parties had entered an oral contract, it is unenforceable for failure to satisfy the statute of frauds. For all of the reasons stated above, the court grants Cranston's motion for summary judgment.

## C. Diversified's Motion for Summary Judgment

Diversified moves for summary judgment on Cranston's counterclaims for an accounting and abuse of process.

### 1. Accounting

Diversified alleges that it has performed a complete accounting. (Pl. Mem. Supp. Summ. J. 1.) Further, Cranston has not submitted any evidence to counter Diversified's assertion. Therefore, Diversified is entitled to summary judgment on this claim.

### 2. Abuse of Process

In addition, Diversified moves for summary judgment on Cranston's abuse of process claim. "[A]n abuse of process is the employment of legal process for some purpose other than that which it was intended by the law to effect—the improper use of a regularly issued process." Huggins v. Winn-Dixie Greenville, Inc., 153 S.E.2d 693, 695 (S.C. 1967). "The essential elements of abuse of process . . . [are]: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding." Id. at 694 (internal quotation omitted). "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. (internal quotation omitted).

9

After review, there is no evidence to support a claim for abuse of process.    Further, Cranston has offered no evidence to counter Diversified's motion.  Therefore, Diversified is entitled to summary judgment on this claim.

Therefore, it is

**ORDERED** that Cranston's motion for summary judgment on Diversified's claim, docket number 38, is granted. It is further

**ORDERED** that Diversified's motion for summary judgment, docket number 41, is granted as to Cranston's counterclaims.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

August 9, 2011
Greenville, South Carolina